This Honorable Court will now resume its session. Please be seated. All right, we'll proceed to hear argument in what was supposed to be the first case on calendar for argument this morning, which is 24-7282 Carly Ridings v. PeaceHealth, Inc. We'll hear first from Mr. Jansen. But first, I'd like to hear your explanation for being late to court this morning. So you received a notice that we start at 9 o'clock. You're told in the notice to arrive early and report to the courtroom deputy clerk before then. I could have called your case at 9 o'clock, heard from the other side, and held you to have waived your argument. We did not do that because we had other cases on the calendar. I allowed it to trail. But I'd like to hear your explanation for why you did not show up on time in an argument in the United States Court of Appeals. Mr. Your Honor, I had a related case, I believe it was a practice case that we recently settled, and that was my first oral argument that I was going to be presenting, and that was starting at 10 a.m. And I apologize, I confused that. Well, if you have a calendar conflict like that, you need to let the courtroom deputy know that. You need to let the other court know that you will be here and that we will take priority over anything else that you have in another court, unless it's the Supreme Court of the United States. Well, that case settled, so in my mind I confused the 10-minute start time with this start time. Okay. Well, I hope you'll understand that, you know, you dodged a bullet, and I will allow you to have your argument. But something like this must never happen again. Yes, Your Honor. Okay. All right. Then you may proceed with your argument. May it please the Court. My name is Paul Jansen, representing the appellant Carly Ridings. I would like to reserve two minutes for rebuttal. This case presents a situation of clear error by the district court. My client had a religious exemption that had about five Bible verses. It was clear religious. The content of that exemption contained so much documentation of her religious convictions. So why wasn't any of this put into the complaint? I mean, you have the exemption. You put it into the opposition to the motion to dismiss, but it wasn't put into the complaint. Why not? Well, under the case COHA versus Orexigen Therapeutics, when you cite something, you can cite something and incorporate that document by reference. So the complaint cited her religious exemption. And so under Twombly versus Iqbal, all that's required is basically a very simple statement of just sufficient to show entitlement to relief. And under the EUC versus Abercrombie decision, the Supreme Court held that that standard was very low. Even simply providing just someone walking into the room with a hijab was sufficient to put the defendant on notice that accommodation might be required. Here, not only does the complaint allege that she submitted a religious accommodation, it also alleges that the defendants received that accommodation and accepted it and said, yes, we're going to accommodate you based on this religious exemption and your accommodation is indefinite, unpaid leave. Your answer is a bit of a shift from Judge Collins' question. I think it starts really with the incorporation by reference doctrine. If we agree with you that the incorporation by reference doctrine applies in this case, don't you win the case because you have much more in that document than the complaint? Absolutely. Okay. And you say that's something that we should consider and hold that the incorporation doctrine applies? Absolutely. Okay. Even if the incorporation by reference doctrine does not apply, though, we still have sufficient basis to win here because, first of all, the EEOC versus Abercrombie substantially lowered the pleading standard to plead religious beliefs. It eliminated the explicit notice requirement. So any kind of actual constructive or inquiry notice is sufficient to put the defendant on notice of a person's religious conflict with an employee requirement. And are you taking Detweiler into account in making your argument? Yes. So Detweiler, first of all, Detweiler dealt with a specific situation where someone was essentially, they had an objection based on carcinogenicity of a nasal swab test. And the court said that that was a secular preference. It wasn't a religious issue. But this is not a case like that. This is a case where my client stated that she had an objection based on her, the fact there was aborted fetal tissue used for constructing and manufacturing the vaccines. And so in almost every court in this district that has looked at exemptions like that, they have upheld those exemptions as valid. But those district court decisions are pre-Detweiler, though. Yes. But Detweiler, Detweiler did not deal with fetal tissue, a fetal tissue exemption. Detweiler dealt with an exemption that was about, that was alleging body is my temple.  But we wouldn't, if we don't consider the request, we wouldn't know the basis that's based on fetal cell objections, right? So if you don't consider that request, then we would have to consider whether the court erred in granting leave to amend to consider that. And I believe the court basically looked at the religious exemption and said that amendment would be futile because the religious exemption was insufficient. And so that's certainly problematic that the court would grant the motion to dismiss and then not allow leave to amend and not allow the introduction of that religious exemption. Did you specifically ask for leave to amend in your opposition? Yes. We've asked for, my understanding is we've asked for that every time. But even if we hadn't specifically requested that, that would be something that the court should have allowed. And it would have been an abuse of discretion not to allow amendments specifically because that highly detailed religious exemption was presented to the court in the process of the motion to dismiss pleadings. And do you feel you've preserved the argument about leave to amend in your briefing on appeal? Yes. So there's some specific case law on this that on Bolker v. Commissioner 760F2D1039, 9th Circuit, 1985, where, for example, if there's issues that are purely legal, whether, for example, whether the exemption letter may be considered or whether the complaint states a plausible claim or whether amendment should be allowed, then those issues can be brought in a required brief. Also, they respond to the issues raised in the answering brief. So the defendants in their answering brief stated that the exemption letter should be ignored. They said that the complaint lacks factual detail and requires dismissal. So the response and the statements in the reply brief were responding to that. And finally, the case law that they were talking about is distinguishable here because whether or not an amendment a judge should have granted leave to amend rather than just simply dismissing a case with prejudice, that is inextricably tied to the fundamental merits arguments of that motion to dismiss. And so the case law they were citing was involving, you know, bringing in brand new arguments about totally different claims or legal reasoning. And so that case is distinguishable. And finally, the Ninth Circuit disfavors striking arguments absent prejudice. So United States v. ULA 976 F2D 509, page 514, Ninth Circuit 1992. So the court should be reticent to do so. Finally, looking at Dightweiler, the procedural posture with Dightweiler currently is that there's a petition for en banc review pending with Dightweiler. And I would encourage the court to review that. But also I want to point out that Dightweiler is distinguishable. First of all, it talks about body as my temple exemptions, not fetal tissue exemptions. And there's about basically 50 percent of the exemptions in these types of cases, which we've litigated a lot, were body as my temple exemptions, where the person is saying, look, I believe my body is a temple of the Holy Spirit. And I believe there's that the vaccine is going to harm me. And so, therefore, I can't take the vaccine. The other 50 percent of those exemptions were, I think the vaccines were manufactured or contained fetal tissue. And so I don't want to take the vaccine for that reason. Do you want to save time for rebuttal? Because you have under two minutes left. Oh, yeah. I apologize. I do want to do that. I just want to make sure I do a couple more arguments here and then wrap it up. That's your rebuttal time. So, OK, I suggest you save the rest of your time if you want it. OK. Yeah. I just want to address one thing with that wire. And I think I want to raise the issue that it's under Larson versus Valente and Edwards, Bartolo Kurt versus Florida Gulf Coast Building and Construction Trades Council. These issues regarding the scrutinizing the content of a person's religious exemption raises First Amendment problems with the establishment cause, the free exercise clause and the free speech clause, because we're looking at rejecting someone's religious beliefs based on their content and their viewpoint. And that's a very serious concern in these types of cases that needs to be analyzed and considered by the court. Thank you. I'll reserve the last 15 seconds for rebuttal. All right, then we will hear now from Mr. Garone. May it please the court, counsel. Plaintiff's complaint contains only a threadbare and unadorned conclusion that her religion prevented her from taking the COVID-19 vaccine. Well, but the the plaintiff filed an opposition in which the plaintiff also submitted a declaration that it attached the, you know, the request. And it's extensively quoted in there. And then the opposition, you know, by amendment. And then the district court does this very odd thing, which is it's dismissed without prejudice. And the clerk is directed to enter judgment, which is just bizarre. If the complaint is being dismissed without prejudice under Iqbal, it's almost a fortiori on a first motion that you have to grant leave to amend. And I can't fathom what the district court did. Why was judgment entered to be directed without prejudice? Your Honor, I can't read the district court's mind on that one either. But I would say this. It seems on its face reversible error. It was never assigned as error in the opening brief. And we have a motion to strike that is pending before this court, Your Honor, or before this panel with regards to this issue that he should have been granted leave to amend, because the issue of whether the complaint should have been dismissed in its unadorned form where it has one sentence, conclusory sentence about religion is different from the issue as to whether he should be granted leave to replete. And one would think that in your opening brief, if you're complaining about being denied leave to replete, that you would identify that as an independent issue, which it is a separate issue, Your Honor. But it's not jurisdictional, and we have discretion to notice what is an obvious on the face of the district court error. You cannot dismiss a case without prejudice for failure to satisfy Iqbal without granting leave to amend, particularly when it's in the opposition. I don't think I've ever seen an Iqbal grant of a motion to dismiss and then order the clerk to enter judgment without prejudice and say nothing about leave to amend. I can't unsee it. Well, Your Honor, the plaintiff had options to try to remedy that situation. For instance, he could have filed a motion under FRCP 60. He could have, but he could also, given that the district court stuck him with a judgment, he can appeal it to us. He can, Your Honor. That's true. But I don't think he's preserved that error. And I think in any event, even with the letter that was not, by the way, incorporated by reference in the complaint. But suppose we're not, just hypothetically, suppose we don't agree with you on that, and we're going to say that the district court should have considered the letter essentially as a proffer of what the complaint could say if it's amended, which is a very rational way to read this, that if I put a letter in with my opposition, that's what I could say in the complaint if afforded leave to amend. Correct. So then if we take that into account and we measure it against Iqbal, tell me why you think it still falls short of Iqbal, if you believe that. I do believe that, Your Honor, and for several reasons. Number one, if you read the letter carefully, it begins with four bullet points, which can be found at ER 51. Those four bullet points contain a statement of secular safety concerns about the effects of the vaccine on pregnant women based upon plaintiff's views on the newness of the vaccine, lack of clinical trials for pregnant women, and the possibility of adverse reactions. That's, in essence, the first page of the letter. Plaintiff then states that because of these safety concerns that were expressed in those first four bullet points, she cannot take the vaccine because of her religious belief that her body is a temple. Well, can you address the second to last bullet point? It says, though the aborted cells used to create vaccinations in the 70s and 80s may be far removed from today's vaccine, they still originate from those aborted children. The practice of using an aborted child's body for science against his will violates my religious conscience. And then contrast that with footnote two in Detweiler where we say that's enough. Right. Well, Your Honor, first, I will get to that, but the body is a temple thing is kind of foreclosed by Detweiler. So going to your question, first, she never says in the letter that she has a religious objection to abortion. Second, she references violates my religious conscience and cites Jeremiah one five. I'm not sure how that's not based on our religious beliefs. She she references, Your Honor, aborted fetal cell lines being used to create vaccine vaccines in the 1970s and 1980s and never states that these lines were used to create the COVID-19 vaccine. Third, she admits that these older vaccines are far removed from today's. We have to read, you know, if if we're to treat this as something that's in the Iqbal hopper that we have to consider, then we have to read the allegations in the light most favorable to the plaintiff. And under Iqbal itself, we draw reasonable inferences from them. It's certainly a reasonable inference from this that she's asserting that the COVID vaccines were derived from these because she's. Why else is she made? Oh, let me just mention some irrelevant fact about, you know, aborted lines. Of course, the reasonable reading of this is that these were used in the COVID vaccines. You may disagree with that, but that's the the reasonable reading of the assertion. And that she has a religious objection based on opposition to abortion, to using a medication derived from aborted fetuses. Why isn't that a reasonable reading of this bullet point? Well, Iqbal, Your Honor, sets forth a plausibility standard as opposed to a possibility standard. And I agree that reading that language, it's possible that that's what she was referring to. But if you read the actual language of what's in her letter, she's talking about fetal cell lines in the 1970s and 80s. In the context of the entire letter, the gist of the entire letter is that she was concerned about the effect of the vaccine on her unborn child. And, you know, and on herself due to her pregnancy. That's kind of the gist of it. But this, in our minds, is kind of under Dettweiler, is more or less a broad invocation. It's not a specific objection based upon her religious objection to abortion. She never says that she has a religious objection to abortion. And she never specifically says that the COVID-19 vaccines were derived from fetal line cells that were derived from aborted fetuses. So, yeah, you're reading between the lines, and I would submit that it is not a reasonable inference. There is a possibility that's what she meant, but that is not what she says in the letter. And, Your Honor, I still think that the — you know, we have to look at the — at preservation here. I mean, there's — the whole issue of whether that letter was incorporated by reference, I think, was never raised in the brief, the opening brief. And, by the way, several of the cases cited by counsel today in his opening argument are not found in any of the briefs. They're not found in any 28F letter submitted to this court. So we don't have the benefit of having, you know, read his argument about those particular cases. But — and then, of course, we have the issue of him never raising the issue of being given leave to replete in his brief. So the whole portion — the whole purpose of appellate advocacy is to have issue-driven advocacy, where you file a brief, you set forth your arguments, and you give the opposing side an opportunity to weigh in on those arguments. And here that wasn't done. When we filed a motion to strike, I was under the impression that Mr. Jansen was okay with striking the portion of the brief about leave to replete. But it certainly isn't in his brief. And so we would ask the court to strike that, to hold counsel to the type of issue-driven advocacy that Rule 28 of Federal Rule Appellate Procedure 28 requires, that you lay out your arguments in your brief. And there is no argument in that brief. There's one reference to the incorporation by reference doctrine in a footnote, and that's it. So it's our position, Your Honor, that you should not consider the letter, and you should not consider any argument that he should be given a chance to replete because it's not put forth in his brief. And it's waived. And I grant the court has discretion to do these things, but these rules mean something. These rules of advocacy and proper appellate procedure do mean something. This isn't an issue with great surprise, where somebody raises an entirely unrelated line of argument. I mean, you know, this is Iqbal, where he's already trying in the opposition to get the letter in, and he asked for leave to amend. It's obvious, and you know that that's in the mix of issues. So you were not surprised by the fact that you have to address the letter. But, again, Your Honor, I would, I guess the way you're framing the question, I guess I'd come back to it's harmless error in the sense that we still don't think the letter. That I understand. That's agreed. But, you know, when we would exercise discretion on whether to overlook, you know, a forfeiture, one of the big issues is prejudice. Is there genuine surprise, like, oh, my goodness, I didn't know you were going to raise that. This isn't in that ballpark, because this is in the opposition below. It's in the guise of incorporation by reference. So the substance of this is something you've already met in the district court. You're meeting here. And so you're not prejudiced in the way that you would normally look at. I guess I would quarrel a little bit with that, because if it was raised distinctly in the opening brief, there is a lot of case law about incorporation by reference. And the case that counsel cited, I think, says that the doctrine is easy to state but can be very hard to apply. And there is a lot of cases from the Ninth Circuit where the court wrestles with whether a document was properly incorporated by reference. So if it had been raised, I think we would have had a more robust opportunity to plead it or, excuse me, to brief it in our response brief. But I guess I would leave the court with this. We don't think that the allegation with regards to the fetal cell lines rises to the level of plausibility under Iqbal and its mere possibility. And so even if they were allowed a chance to replete and add that, we still think that the motion to dismiss should have been granted. Thank you, Your Honors. Thank you, counsel. All right, we'll hear rebuttal. Although you did not save time, even though I was trying to warn you about that, we did take your opposing counsel over, so we gave him more time. So I will give you the two minutes you had requested. Okay, thank you, Your Honor. So our position is that we provided defendants in this case with substantial evidence of our intent to assert arguments about failure to amend. And I believe we requested an amendment in our opposition to the motion to dismiss. But his argument is he didn't put it in the opening brief. It's in the—I checked. It's in the opposition. You do cite the Rule 15 standard and the rule that you can't dismiss the case without giving me a lead to replete unless it's impossible. But where is that in the opening brief? That's his point. Yes, so the opening brief does have that footnote about incorporation by reference. No, but this isn't incorporation. This is amend. If you don't buy my incorporation—incorporation by reference is it's already in the complaint. Not that it needs to be amended. It's really already there. But did you argue in the opening brief I should have been granted leave to replete, to add in additional allegations to meet the Iqbal test? No, we didn't specifically argue that in the opening brief. But what I believe is reasonable here, Your Honor, is that that is expected. And basically, if we're arguing that the judge was wrong in dismissing the case and we're arguing it was wrong by failing to consider the religious exemption, then by implication the judge was wrong by failing to give leave to amend. And so this is not an argument that is something that the defendant didn't have notice of or didn't have an opportunity or was surprised about us raising in the reply brief. And it's definitely something that they got the opportunity to argue today and to respond to today during oral argument. So I don't think there's prejudice there for us to be able to continue to raise that. All right. All right. Thank you, counsel. The case just argued will be submitted.
judges: COLLINS, LEE, Fitzwater